STACY, Appellant, v. ASHLAND COUNTY DEPARTMENT OF PUBLIC WELFARE and another, Respondents.

*No. 298. Argued June 4, 1968.—Decided June 28, 1968.*
(Also reported in 159 N. W. 2d 630.)

---

598

For the appellant there were briefs by *David Wartman* and *Wartman & Wartman,* all of Ashland, attorneys, and *Joseph Preloznik* and *Jonathan D. Jackson, Jr.,* both of Madison, of counsel (Wisconsin Judicare), and oral argument by *Mr. Jackson.*

For the respondents the cause was argued by *Donald P. Johns,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HALLOWS, C. J.   Considerable effort was spent on this appeal on the question of whether a decision made under sec. 49.50 (8), Stats., by the State Department of Public Welfare is subject to judicial review under ch. 227, as a matter of right or whether such a decision is only reviewable by certiorari. Sec. 49.50 (8) provides a person whose award of aid to dependent children is modified or canceled by a county may petition the department for a review of such action and the department must grant a hearing and render a decision. The section then provides "such decision shall be final, but may be revoked or modified as altered conditions may require." In *Tyler v. State Department of Public Welfare* (1963), 19 Wis. 2d 166, 119 N. W. 2d 460, we strongly intimated that decisions of the department of public welfare were reviewable under secs. 227.15–227.21, inclusive. We pointed out that sec. 227.01 defined "agency" as any department with some exceptions not applicable and that sec. 227.15 which dealt directly with judicial review of orders excepted decisions of the department of taxation, commissioner of

banks, and the commissioner of savings and loan associations, but did not except decisions of the department of public welfare. However, we held in *Tyler* that a prisoner's interest in being paroled was not a right or privilege within the meaning of sec. 227.15 and consequently a decision involving parole was not reviewable under that section.

This court earlier in *State ex rel. Ball v. McPhee* (1959), 6 Wis. 2d 190, 94 N. W. 2d 711, stated in considering whether a certiorari proceeding was proper that the legislature could "by a specific statute not embodied in ch. 227, Stats., exclude other agency decisions from review under the Administrative Procedure Act" besides those that were expressly excluded by the act itself. The court then stated that the provisions of sec. 37.31 (1), Stats., providing that the decision of the Board of Regents of State Colleges "shall be final" was sufficient to remove such decisions from judicial review under sec. 227.15. However, such language did not deny all judicial review, for the court recognized the availability of the writ of certiorari and enlarged its scope on review from the confining limits of whether the agency acted within its jurisdiction to the broader bounds of whether the agency acted according to both law and the sufficiency of the evidence. Specifically the scope of the review on certiorari was held to include: (1) Whether the board kept within its jurisdiction, (2) whether it proceeded on a correct theory of law, (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment, and (4) whether the evidence was such that it might reasonably make the order or determination in question. This scope of the review is substantially the same as that provided in sec. 227.20, for review under that chapter.

We are asked to overrule the *Ball Case* in respect to its statement that if a statute provides an administrative decision shall be final such language applies not only to

administrative finality but also prevents judicial review under the Wisconsin Administrative Procedure Act. In *Cobb v. Public Service Comm.* (1961), 12 Wis. 2d 441, 107 N. W. 2d 595, we recognized that the legislature could provide methods and procedures for review as an alternative to or as a condition precedent to a review under ch. 227, Stats. But in that case the added step was clearly and expressly stated.

The problem raised in the instant case is not whether the language "shall be final" denies all the judicial review but rather whether it denies judicial review of right under ch. 227, Stats. We have consistently held there must be some judicial review of administrative orders. In *Outagamie County v. Smith* (1968), 38 Wis. 2d 24, 155 N. W. 2d 639, we examined the question of review by certiorari where no provision was made for a review of a decision of a board or a commission. We therein stated, at page 35:

"The recent case of *State ex rel. Kaczkowski v. Fire & Police Comm.* (1967), 33 Wis. 2d 488, 500, 148 N. W. 2d 44, 149 N. W. 2d 547, summarized the holdings of *State ex rel. Ball v. McPhee* (1959), 6 Wis. 2d 190, 199, 94 N. W. 2d 711; *State ex rel. Wasilewski v. Board of School Directors* (1961), 14 Wis. 2d 243, 111 N. W. 2d 198; and *State ex rel. Gudlin v. Civil Service Comm.* (1965), 27 Wis. 2d 77, 133 N. W. 2d 799, and concluded that they 'all stand for the rule that where there are no statutory provisions for judicial review the action of a board or commission may be reviewed by way of certiorari.' "

Another recent affirmance of the view that there must be a judicial review of administrative rulings is found in *Schmidt v. Local Affairs & Development,* ante, p. 46, 158 N. W. 2d 306, which relied upon *State ex rel. Wisconson Inspection Bureau v. Whitman* (1928), 196 Wis. 472, 220 N. W. 929.

We think the language referring generally to finality of administrative decisions such as is contained in sec.

49.50 (8), Stats., is not intended to deprive a litigant of a right to review under ch. 227. The general rule of the Administrative Procedure Act is to grant review of final rulings of administrative agencies and the statutory exceptions appearing outside that act should be as clear and expressive as the exceptions provided in sec. 227.15. The finality of an administrative-agency decision means that agency may not reopen the decision unless there are altered conditions, not that there is no judicial review under ch. 227. This is the better view of the problem. *See* 4 Davis, *Administrative Law Treatise,* p. 1, sec. 28.01, *et seq.;* Annot. (1960), *Power of administrative agency to reopen and reconsider final decision as affected by lack of specific statutory authority,* 73 A. L. R. 2d 939. To this limited extent the language of the *Ball Case* to the effect a general statutory provision of finality of an administrative decision prevents review under ch. 227, is overruled and withdrawn.

Mrs. Stacy argues the circuit court applied the wrong test for the sufficiency of evidence in reviewing the department of welfare's determination. Stress is laid on the use of the term "some substantial evidence." True, the court used the term in one place in its opinion but in another part of the opinion the court stated the issue was whether there was substantial credible evidence to support the findings, and it also concluded the findings and conclusions had to be affirmed as not being unsupported by substantial evidence. We think the court had the proper test of the sufficiency of the evidence in mind.

It is academic whether we consider this review as governed by ch. 227, Stats., or by certiorari. The test on certiorari for sufficiency of the evidence is the substantial evidence test, which has been the subject of many decisions. We see no difference between stating this test in the affirmative and stating it in the negative as is done in sec. 227.20 (1) (d), "unsupported by substantial evidence in view of the entire record as submitted." In *Ash-*

*waubenon v. State Highway Comm.* (1962), 17 Wis. 2d 120, 131, 115 N. W. 2d 498, we stated the substantial evidence rule of this section was whether reasonable minds could arrive at the same conclusion reached by the commission. This concept of reasonableness was said to be implied in the statutory words "substantial evidence." In *Copland v. Department of Taxation* (1962), 16 Wis. 2d 543, 114 N. W. 2d 858, and in the earlier case of *Gateway City Transfer Co. v. Public Service Comm.* (1948), 253 Wis. 397, 34 N. W. 2d 238, we said in effect that substantial evidence was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Of course, in applying the substantial evidence test this court does not pass on credibility or assay the evidence to determine which view preponderates or what evidence supporting a theory is of the greater weight. This court, however, must evaluate the evidence, which has been determined to be credible and accepted by the trier of the fact to see if its sufficiency reaches that degree of substantiality in terms of burden of proof to support a finding or of convincing power that reasonable men acting reasonably might reach the decision the administrative agency did.

There is very little dispute in the facts. The thrust of Mrs. Stacy's attack on the determination is that she ought not be required to do remunerative work outside her home if she believes that by so working her home, her children, and her mother, would be neglected within the meaning of sec. 49.19 (6), Stats. It is not denied that the county welfare department may under some circumstances require work, but it is strongly urged in this case the determination is contrary to and frustrates the purposes of the act providing federal aid for families of dependent children and the evidence shows Mrs. Stacy is needed in her home.

The welfare department found Mrs. Stacy was offered work in a nursing home in the city of Ashland "with consideration being given to her hours of work so as not to conflict with duties as a homemaker." Finding number 7 provided "that adequate arrangements could and would be made by the agency to prevent hardship, financial or otherwise, in the event of the employment of the petitioner." By finding number 9, the department found "the objections stated by petitioner to gainful employment do not justify her refusal to work." The department concluded that Mrs. Stacy was without adequate cause in refusing to accept employment and the Ashland county agency properly suspended her grant of aid to families with dependent children.

Mrs. Stacy maintains a home for her children in which her mother also lives. The children attend school and a hot-lunch program is available. Mrs. Stacy is physically fit for work. The department offered to make up any budgetary deficit caused by the work and stated the purpose of the employment of Mrs. Stacy was to build up a social security fund for her. Full-time work was not required of Mrs. Stacy and her hours of work could be adjusted to her home needs.

Mrs. Stacy's reason for refusing to work was that she was needed at home to care for her mother and her children. Her mother has had some surgery and also a serious arthritic condition. The department offered to provide nursing care in the home for the mother and baby-sitting service for the children. Mrs. Stacy's minister testified it was important for her to remain in her home at all times because her eleven-year-old daughter was active and tended to be flighty. Mrs. Stacy thought her children were too young to be without her until the oldest child reached age fifteen. The circuit court considered the evidence substantial in support of the decision that Mrs. Stacy could work without conflicting with her duties as a homemaker.

This proposition is disputed by Mrs. Stacy who argues that under the amendment to the Social Security Act, P. L. 90–248, sec. 204 (January 2, 1968), which established a work incentive program for welfare recipients, she would not be required to participate in this incentive program. This argument is based on the view she is "a person whose presence in the home on a substantially continuous basis is required because of the illness or incapacity of another member of the household." 42 USCA, sec. 602 (a) (19) (A) (vii). In this respect, Mrs. Stacy concludes she has the right to take care of her mother and the nursing-service offer cannot be substituted by the agency without her consent. However, under Wisconsin law a county agency may require a mother to do such remunerative work as in its judgment she can do without detriment to health or neglect of her children or her home. Sec. 49.19 (6), Stats. It was under this section that the Ashland county agency required Mrs. Stacy to work. It is claimed this section must be read with the overall purpose of the program for aids to families of dependent children. While certain types of work and hours of work outside of the home might cause Mrs. Stacy to neglect her children within the meaning of sec. 49.19 (6), we cannot hold that any and all outside work or separation from her home would necessarily result in neglect of her children. This is a factual determination to be made by the welfare agency and not by the recipient or beneficiary of the welfare aid.

The basic argument of Mrs. Stacy is that the ruling of the welfare department frustrates and prevents the fulfillment of the purpose of aids to families of dependent children by not allowing the parent to remain in the home. There is no doubt the dominant purpose of this welfare program is to encourage and make possible more normal living conditions for dependent children. The application of the "employable mother" doctrine may in a particular instance frustrate the policy of such aid.

While this doctrine seeks the desirable social goal, its application in a given case such as here is not necessarily antagonistic to the purpose of the A.D.C. program.

The agency determined these children of eleven and nine years did not demand the presence of their mother in the home at all times. It is possible as we read the record for Mrs. Stacy to work while the children are at school and at times when a baby-sitter would be provided.

While a welfare agency has the right to spend public funds to promote the welfare program, it also has the responsibility not to spend taxpayers' funds beyond the limits of those purposes. Those who do not qualify should be denied welfare benefits.

We believe there is substantial evidence which justifies the finding that Mrs. Stacy can work part time outside her home on hours to be arranged which will not unduly interfere with her duty as a mother to care for and supervise her children and without any detriment to her own health. If the determination of the county agency, whose duty it is to make the initial determination, turns out to be erroneous, there is a provision in sec. 49.50 (8), Stats., for the determination to be modified because of altered circumstances.

In her reply brief, for the first time Mrs. Stacy raises the question of constitutionality of sec. 49.19 (6), Stats., on the ground it lacks clearly definable standards. This question was not presented or ruled upon by the court below and cannot be raised here as a matter of right. We decline to undertake a consideration of this issue on our own initiative.

*By the Court.*—Judgment affirmed.