Town of Ashwaubenon, Respondent, v. State Highway Commission, Appellant.*

*May 4—June 5, 1962.*

* Motion for rehearing denied, without costs, on October 2, 1962, WILKIE, J., taking no part.

122

124

For the appellant the cause was argued by *A. J. Feifarek,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

For the respondent there was a brief by *Davis, Soquet, Cherney & Ross* of Green Bay, and oral argument by *Donald E. Soquet.*

GORDON, J. The following issues are presented: First, is the hearing under sec. 84.025 (3), Stats., a hearing in a "contested case;" second, does the State Highway Commission function in a legislative capacity in relocating a state arterial highway; and third, what is the nature of the judicial review under ch. 227, Stats., of a legislative decision by an administrative board?

Sec. 84.025 (1) and (3), Stats., provides that:

"(1) The legislature finds and declares it is necessary in the interests of public safety, convenience, and the general welfare that a part of the state trunk highway system be established as a state arterial highway system forming an integrated, statewide interregional and intercommunity network of highways for the purpose of facilitating the improvement of the state arterial highway system and accelerating the rate of improvement on the entire state trunk highway system.

"(3) Changes may be made in the state arterial highway system by the commission, if it deems that the public good is best served by making such changes. The commission, in making such changes, may lay out new highways by the

procedure under this subsection. Due notice shall be given to the localities concerned of the intention to make changes or discontinuances, and if the change proposes to lay a highway via a new location and the distance along such deviation from the existing location exceeds five miles, then a hearing in or near the region affected by the proposed change shall be held prior to making the change effective. Such notice shall also be given to the state conservation commission and to the state soil conservation committee by serving a copy upon the conservation director and by serving a copy upon the secretary of the state soil conservation committee either by registered mail or personally. A copy of the decision shall be filed in the office of the clerk of each county in which a change is made or proposed. Where the distance along the deviation from the existing location exceeds five miles the change shall constitute an addition to the state trunk highway system. The pre-existing route shall continue to be a state trunk highway unless the county board of each county in which any part of the relocation lies and the state highway commission mutually agree to its discontinuance as a state trunk highway. Whenever such county board or boards and the state highway commission cannot so agree the state highway commission shall report the problem to the next ensuing session of the legislature for determination."

The Highway Commission's proposed relocation of State Arterial Highway 41 involved a deviation from the existing route of more than five miles. Pursuant to the requirement of sec. 84.025 (3), Stats., a public hearing on the proposed relocation was held in the city of Green Bay. Does the validity of the commission's ultimate decision depend exclusively upon the record made at such hearing?

We are convinced that the hearing was merely a part of the investigative processes of the commission and was to aid the commission in its comprehension of the problems involved. Therefore, judicial review of the commission's decision would properly include all the materials and reports which were considered by the commission even though they were received outside of the formal hearing and in an *ex*

*parte* manner. Accordingly, it was not appropriate for the circuit court to exclude from the record to be reviewed the supplemental materials which constituted the commission's files and interdepartmental correspondence.

The so-called fair-play provisions of ch. 227 (secs. 227.07–227.13, Stats., inclusive) do not apply to the case at bar because this is not a "contested case." Although a legislative-type hearing does not necessarily preclude the matter from being a contested case, we are unable to find a contested case in the matter at hand. Sec. 227.01 (2) provides that:

" 'Contested case' means a proceeding before an agency in which, after hearing required by law, the legal rights, duties, or privileges of any party to such proceeding are determined or directly affected by a decision or order in such proceeding and in which the assertion by one party of any such right, duty, or privilege is denied or controverted by another party to such proceeding."

Discussions of what constitutes a contested case are contained in *Hall v. Banking Review Board* (1961), 13 Wis. (2d) 359, 366, 108 N. W. (2d) 543; *Milwaukee v. Public Service Comm.* (1960), 11 Wis. (2d) 111, 116, 104 N. W. (2d) 167; and *Park Bldg. Corp. v. Industrial Comm.* (1960), 9 Wis. (2d) 78, 92, 100 N. W. (2d) 571. It is only in a contested case that a "full, fair, public hearing" is required under sec. 227.07, Stats., and it is in such a case that the record on review is limited to that made at the hearing. Secs. 227.11, 227.18. The record in a contested case may be supplemented only in accordance with sec. 227.19.

While it is arguable that "the legal rights, duties, or privileges" of the town of Ashwaubenon are involved in the relocation of the arterial highway, we consider that such relocation will inevitably affect the rights of *everyone* in proximity to both the new and the old locations, as well as

the public at large. The town of Ashwaubenon had only the same interest in the proposed relocation as any other affected municipality or landowner; it did not have any special kind of interest which would convert the proceedings before the highway commission into a contested case.

When the legislature defined a contested case in sec. 227.01 (2), Stats., it contemplated some special interest such as occurred in *Hall v. Banking Review Board* (1961), 13 Wis. (2d) 359, 108 N. W. (2d) 543. The location of a bank is a matter of public interest just as is the location of a highway. However, the order in the case at bar relocating a highway affects all nearby or traversed municipalities and landowners, whereas in the bank case there was a particularized and adversary interest affecting both the proposed new bank and the existing bank.

Sec. 227.01 (5), Stats., excludes a number of types of action by an administrative agency from the definition of "rule." One type of action by an administrative agency excluded is a decision or order in a contested case, par. (b). Another separate action excluded is one which relates to the relocation of a highway, par. (e). The fact that the drafters of this provision separated a decision or order in a contested case from an action relating to the relocation of a highway in listing actions excluded from the definition of "rule" is some indication that they were considered to be different things.

It may even be doubted that the town of Ashwaubenon is an aggrieved party entitled to seek review of the commission's decision. See sec. 227.16, Stats. The town has sought judicial review because its officials consider the Highway Commission's decision to be erroneous. What we have before us is the contention of one governmental unit (the town) challenging the wisdom of another governmental unit (the Highway Commission). See *Milwaukee v. Mil-*

*waukee County School Comm.* (1959), 8 Wis. (2d) 226, 232, 99 N. W. (2d) 186.

The location or relocation of a state highway in Wisconsin has long been under the aegis of the legislature. The legislature in turn has delegated many of its functions regarding highways to the Highway Commission and that body has been given the discretion to make changes "if it deems that the public good is best served by making such changes."

In *Muscoda Bridge Co. v. Worden-Allen Co.* (1928), 196 Wis. 76, 82, 219 N. W. 428, this court discussed the history and purposes of legislation dealing with highway systems and stated as follows:

"The history of the present system of highway legislation begins with the year 1911, when the state highway commission was created, and a definite attempt was made to unify the highways of the state so as to make a complete highway system therein suitable for modern conditions of travel. The highway commission was given large and comprehensive powers, which powers have been added to from time to time up to the present. The system of highway construction carried on since that time has been at a tremendous cost to the state and its municipalities, and it has been carried on under great difficulties. Formerly the highways consisted almost entirely of town highways and a few county highways, but no connected statewide system. Under the present necessities of travel it was found necessary to have trunk highways so connected as to be able to reach any part of the state, and so improved as to be appropriate for present methods of travel. It became necessary to straighten these highways and to relocate some of them, or parts of them, for that purpose, and to obtain better grades; it became necessary to make easy turns instead of square corners in the highways; it became necessary to widen them in places and to put in stronger bridges and culverts; it was necessary to surface the roads, and on the main trunk highways to put in concrete or other lasting material. To do these things it was necessary to give the highway commission authority to

move rapidly and continuously in the development of such highways. The legislation during this time clearly outlines the legislative intent to prevent any unnecessary obstruction to the program. For this reason the legislation must be liberally construed to carry out the legislative intent."

We consider that the foregoing language applies to a state arterial highway under sec. 84.025 (3), Stats.

The breadth of the commission's power in laying out state highways is suggested in *Agnew v. Hotchkiss* (1926), 189 Wis. 1, 3, 206 N. W. 849:

" 'Highways are only to be laid out when the public good will thereby be promoted. Private considerations or inducements cannot rightly enter into the question in any degree.' [Citation omitted.] It is immaterial whether such inducements be the building of bridges or the voting of bonds by persons who are interested in the location or improvement of a particular road. The controlling factor must always be the good of the general public and not the convenience or financial gain of the people who live along any particular highway."

Having set forth in sec. 84.025, Stats., the general legislative purposes, the legislature properly delegated to the commission the authority to carry such purposes into effect. *Milwaukee v. Sewerage Comm.* (1954), 268 Wis. 342, 67 N. W. (2d) 624; *David Jeffrey Co. v. Milwaukee* (1954), 267 Wis. 559, 66 N. W. (2d) 362. We consider that changes in the state arterial highway system are made by the Highway Commission as a legislative function. The considerations which have prompted the judiciary to desist from all unnecessary intrusions on determinations of the legislature apply with equal force to the decision of the Highway Commission in locating or relocating an arterial highway. In *State ex rel. Kellogg v. Currens* (1901), 111 Wis. 431, 438, 87 N. W. 561, we stated:

"The reasons for a given statute are for the legislature, if there are any which can fairly have weight. They are not for the courts. The latter have no control over the validity of a law unless they can say with substantial certainty that no argument or consideration of public policy exists which could have weight with any reasonable and honest man. If any such argument or reason can be suggested, its weight or sufficiency is not debatable in the courts. The existence of legitimate and adequate reasons for any law should not lightly be denied. Human minds differ, and what may seem inadequate or irrevelant to one may seem cogent to another. One is not justified, therefore, in assuming that all who differ from him are unreasonable or are not acting in good faith. It is from such considerations as these that the courts have laid down for themselves the rule that only in a clear case—clear beyond reasonable doubt—will they venture to assert that a law is without reason to support either its purpose or the classifications it may make."

The validity of this reasoning was recently recognized in *Borden Co. v. McDowell* (1959), 8 Wis. (2d) 246, 258, 99 N. W. (2d) 146. Thus, when the "substantial evidence" rule of sec. 227.20 (1) (d), Stats., is applied to a legislative-type decision, the test is whether reasonable minds could arrive at the same conclusion reached by the commission.

In view of the wide berth to be given to administrative decisions of a legislative character, we are satisfied that upon the entire record there is substantial evidence to sustain the decision of the Highway Commission.

*By the Court.*—Judgment reversed, with instructions to reinstate the decision of the Highway Commission.